UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MODESTO PABLO,

    Petitioner,

v.

Case No. 2:26-cv-261-KCD-DNF

WARDEN OF FLORIDA SOFT SIDE SOUTH (ALLIGATOR ALCATRAZ), DIRECTOR GARRET RIPA, ACTING DIRECTOR TODD M. LYONS, SECRETARY KRISTI NOEM, ATTORNEY GENERAL PAMELA BONDI,

    Respondents.
_____/

## ORDER

Petitioner Modesto Pablo, a national of Guatemala who entered the United States without inspection in 2007, seeks a writ of habeas corpus to resolve his unlawful immigration detention. (Doc. 1.)[1] According to Pablo, he "has remained in unlawful indefinite mandatory detention in violation of the Immigration and Nationality Act and of his Fourth and Fifth Amendment Due Process Rights under the U.S. Constitution." (*Id.* at 2.)

Shortly after filing the habeas petition, Pablo moved for a temporary restraining order. (Doc. 4.) He complains that Respondents transferred him out of Florida—first to Karnes City, Texas, and then to the Central Louisiana

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

ICE Processing Center in Jena, Louisiana. He now demands that this Court enjoin Respondents from transferring him without prior Court authorization, enjoin his removal from the United States, and order his immediate return to the Middle District of Florida. (*Id.* at 5.)

The Court lacks jurisdiction to grant much of the requested relief. And to the extent the Court possesses the equitable power to act, Pablo has failed to satisfy his heavy burden of demonstrating that we must. Stripped of its rhetorical flourish, his motion offers nothing but naked assertions of harm rather than the concrete evidence required to justify such an extraordinary remedy.

## I. Standard of Review

To obtain a temporary restraining order or a preliminary injunction, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Immediate injunctive relief is an "extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).

## II. Discussion

Pablo's habeas petition raises substantive arguments that warrant judicial attention. But having a good argument is not alone enough for a temporary restraining order—you must also seek a remedy that the Court can give. *See, e.g.*, *Sekona v. Perez*, No. 1:19-CV-00400-JLT-HBK, 2025 WL 2140093, at *2 (E.D. Cal. July 29, 2025) ("The injunctive relief an applicant requests must relate to the claims brought in the complaint."). The fundamental stumbling block here is the relief Pablo requests.

He first seeks to enjoin the Government from moving him to another facility without prior approval. (Doc. 4 at 2.) He argues that such relief is necessary because shifting facility placements will "irreparably harm" his ability to prosecute the habeas petition. (*Id.* at 6.)

The problem with this argument is straightforward: the Court need not halt further transfers to protect its ability to hear this case. "[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian." *Villa v. Normand*, No. 5:25-CV-89, 2025 WL 3113200, at *4 (S.D. Ga. Oct. 16, 2025). So an order enjoining Pablo's further relocation beyond the Middle District of Florida is superfluous. We do not issue injunctions to prevent harms that legally cannot

3

happen. *Cf. Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985).

To the extent Pablo complains that his transfer to Louisiana—or any potential future transfer—will impede his ability to litigate this case, he offers nothing but naked assertions. Consider what the motion actually says, or rather, what it leaves out. Pablo asks the Court to protect his access to counsel and "ability to litigate the habeas petition." (Doc. 4 at 6.) But he provides absolutely no factual support to suggest those rights are currently under threat. He does not allege that the Louisiana facility lacks telephones, video conferencing, or private meeting rooms. He does not submit an affidavit from his lawyer claiming she tried to reach him and was blocked by facility staff. Nor does he provide a single concrete example of how the transfer has actually prejudiced his legal strategy, compromised a filing, or caused him to miss a deadline. In our legal system, district courts do not issue extraordinary emergency injunctions based on generalized anxiety about what might happen next or the ordinary administrative friction of long-distance communication. A temporary restraining order requires a concrete demonstration of actual, imminent, and irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Merely parroting the phrase irreparable harm, as here, is not enough. *See, e.g., Art Is Love Holdings, LLC*

4

*v. Twite*, No. 1:25-CV-6884-SEG, 2025 WL 3900330, at *9 (N.D. Ga. Dec. 31, 2025).

Next, Pablo seeks to enjoin the Government from removing him from the United States. (Doc. 4 at 6.) That is a hard no. The Immigration and Nationality Act contains a jurisdiction-stripping provision that is as clear as it is potent. It states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). This provision is designed to protect the Government's discretion in three specific areas: commencing proceedings, adjudicating cases, and—crucially for Pablo—executing removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). When a claimant seeks an injunction to stay his removal, he is asking the court to do exactly what the statute forbids: interfere with the Government's decision to execute a removal order. *See Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1271 (11th Cir. 2021).

Staying Pablo's removal would be to forbid the executive from doing what § 1252(g) says we cannot interfere with. "Courts across the country have thus found that they are barred from staying removal, even when the court might otherwise have jurisdiction over the [underlying] claims

5

presented." *Edwin M.-N. v. Green*, No. CV 19-6096 (KM), 2019 WL 13299141, at *2 (D.N.J. Feb. 19, 2019); *see also Rivera-Amador v. Rhoden*, No. 3:25-CV-1460-WWB-SJH, 2025 WL 3687452, at *3 (M.D. Fla. Dec. 19, 2025); *Lopez v. Warden, Stewart Det. Ctr.*, No. 4:18-CV-134-CDL-MSH, 2018 WL 7051097, at *2 (M.D. Ga. Dec. 26, 2018). Because § 1252(g) removes this Court's power to act, Pablo's request to enjoin removal from the United States must be denied. *See, e.g., Torres-Mejia v. Trump*, No. 1:25-CV-1623, 2025 WL 3684258, at *9 (W.D. Mich. Dec. 19, 2025) ("Because a general request for a stay of removal would concern a decision or action by the Attorney General to . . . execute removal orders, the Court finds that § 1252(g) precludes [its] jurisdiction over such claims.").

Finally, Pablo demands that the Court order his return to the Middle District of Florida. (Doc. 4 at 6.) Congress gave the executive branch the authority to arrange for appropriate detention facilities. *See* 8 U.S.C. § 1231(g)(1). Pablo offers no compelling reason for this Court to override that authority—if it even can—and force him back to Florida. *See Marquez-Diaz v. Ripa*, No. 25-CV-23256, 2025 WL 2061675, at *3 (S.D. Fla. July 22, 2025) ("[A] district court lacks jurisdiction to enjoin the government from transferring immigration detainees to other districts, as those decisions fall within the discretion of the Attorney General."). As noted, this Court has jurisdiction over the underlying petition. That petition raises purely legal

6

questions about statutory interpretation. There is nothing in the record to suggest that Pablo cannot litigate those legal claims from another facility just as effectively as he could from here.

### III. Conclusion

In the end, Pablo's underlying habeas petition remains securely before this Court and the merits will be evaluated in due course. But his demand for an emergency injunction asks too much, based on too little. The Court cannot enjoin a removal it has no statutory jurisdiction to stop, nor will it micromanage the Government's detention logistics to prevent transfers or force Pablo's return to Florida based on hypothetical harms he has entirely failed to prove. Because Pablo has not demonstrated the irreparable injury necessary to justify such an extraordinary remedy, the Emergency Motion for a Temporary Restraining Order (Doc. 4) is **DENIED**.

**ORDERED** in Fort Myers, Florida on February 24, 2026.

Kyle C. Dudek
United States District Judge